IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| ATHENA G.,[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:20-CV-00051-BU |
| | § | |
| KILOLO KIJAKAZI,[2] | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF**
**THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Athena G. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Dkt. No. 1. This case was referred pursuant an order of referral from United States District Judge Sam R. Cummings and reassigned to the undersigned United States Magistrate Judge on March 17, 2020. Dkt. No. 6. The parties have not consented to proceed before a magistrate judge.

For the reasons explained below, the undersigned recommends that the Court affirm the Commissioner's decision.

## I.  BACKGROUND

Plaintiff alleges disability beginning November 8, 2012, due to a variety of ailments, including lower back injury, bulging discs, degenerative disc disease, arthritis of the lower

---

[1] Due to concerns regarding the privacy of sensitive personal information available to the public through opinions in Social Security cases, Plaintiff is identified only by first name and last initial.
[2] Pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, the current Acting Commissioner of the Social Security Administration has been automatically substituted as a party.

back and spine, vertebral fracture, scoliosis, stenosis, muscle spasms and tearing, nerve damage, elevated red and white blood cell counts, depression, anxiety, headaches, and asthma. Tr. 151–52. Plaintiff filed applications for Disability Insurance Income ("DIB") and Supplemental Security Income ("SSI") on June 8, 2015 under Title II and Title XVI, respectively, of Social Security Act (the "Act"). *Id*. Plaintiff's applications were denied initially and upon reconsideration. Tr. 385–398. Plaintiff challenged the denials and requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff's request for a hearing was granted. The ALJ held an administrative hearing on March 22, 2017 and the ALJ issued his decision finding Plaintiff not disabled on August 4, 2017. Tr. 195–210. The Appeals Council ("AC") reversed and remanded that decision back to the ALJ, finding that the ALJ had failed to adequately address statements made by Plaintiff's treating physician, Victor Hudman, M.D. Tr. 216–19. A subsequent hearing on December 20, 2018 was continued so that Plaintiff could obtain an attorney. Tr. 129–140.

The ALJ then held an administrative hearing on June 11, 2019, where Plaintiff was represented by an attorney. *See* Tr. 105–127. Plaintiff and a vocational expert ("VE") offered testimony at the hearing. Plaintiff was 44 years old at the time of the hearing. Tr. 108. She has a GED and past work experience as a nail technician and finance manager. Tr. 122. Plaintiff alleges she stopped working on November 7, 2012. Tr. 109. Plaintiff testified that her chronic back pain, PTSD, anxiety, depression, and bipolar disorder as the main medical conditions that interfere with her ability to work. *Id*.

On July 31, 2019, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled, and therefore not entitled to disability benefits. *See* Tr. 77–96. The ALJ's

decision followed the five-step sequential evaluation process.[3] 20 C.F.R. § 404.1520(a)(4).

At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial

gainful activity from her the alleged disability onset date, November 8, 2012. Tr. 82. At

step two, the ALJ found that Plaintiff had the severe impairments of obstructive sleep

apnea, morbid obesity, major depressive disorder, osteoarthritis, scoliosis, and mild

degenerative changes of the lumbar spine. Tr. 82. The ALJ further determined that

Plaintiff's alleged diastolic heart dysfunction, chronic obstructive pulmonary disorder,

mild restrictive lung disease, pulmonary edema, anxiety disorder, bipolar disorder, carpal

tunnel syndrome, and benign left adrenal adenoma were non-severe impairments. Tr. 83.

At step three, the ALJ determined that none of Plaintiff's impairments or

combination of impairments met or equaled the severity of one of the impairments listed

in the Social Security regulations. Tr. 84. The ALJ then determined that Plaintiff had the

residual functional capacity ("RFC") to

> to lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; sit,
> stand, or walk (individually or in combination) throughout an 8-hour workday; and
> otherwise perform the full range of light work, except: She cannot crouch or climb
> ladders, scaffolds, or ropes. She can only occasionally balance, stoop, kneel, crawl,
> or climb ramps or stairs. She requires a generally clean environment and so must
> avoid concentrated exposure to airborne contaminants, such as dusts, fumes, and
> mold, but working in a climate-controlled environment, including a normal office
> environment, is allowed. She can perform occupations involving detailed, but not
> complex, instructions.

Tr. 86. At step four, the ALJ found that Plaintiff was unable to perform any of her past

relevant work. Tr. 94. However, relying on a vocational expert's testimony, the ALJ found

---

[3] As discussed further below, the Commissioner employs a five-step analysis in determining whether claimants are
disabled under the Social Security Act.

that Plaintiff was capable of working as a document scanner, office helper, and telephone solicitor—jobs that exist in significant numbers in the national economy. Tr. 95. The ALJ therefore concluded that Plaintiff was not disabled under the meaning of the Act. Tr. 96.

Plaintiff appealed the ALJ's decision to the Appeals Council. The Appeals Council denied review on January 25, 2020. Tr. 1–4. Therefore, the ALJ's decision is the final decision of the Commissioner and is properly before this Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's final decision necessarily includes an Appeals Council's denial of a claimant's request for review.").

Plaintiff then timely filed this action in federal district court.

## II. LEGAL STANDARDS

Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards were applied to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Substantial evidence means more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). While a reviewing court must scrutinize the administrative record to ascertain whether substantial evidence supports the Commissioner's findings, it may not reweigh the evidence, try issues *de novo*, or substitute its own judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Hollis v.*

*Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citing 42 U.S. § 405(g)). A reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

To be entitled to Social Security benefits, a claimant must show that she is disabled within the meaning of the Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

In evaluating a disability claim, the Commissioner has promulgated a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the Social Security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *See* 20 C.F.R. § 404.1520; *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. Once the claimant satisfies his or her initial burden, the burden shifts to the Commissioner at step five to show that there is other gainful employment in the national economy that claimant is capable of performing. *Greenspan*,

38 F.3d at 236. If the Commissioner shows that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557 (citing *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989) (per curiam); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)). If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728–29 (5th Cir. 1996).

## III.  DISCUSSION AND ANALYSIS

Through this appeal, Plaintiff objects to the Commissioner's decision on two grounds. First, Plaintiff argues that the ALJ erred by failing to properly consider several treating source opinions, despite the fact that the AC ordered the ALJ on remand to address all of the medical opinion evidence. Dkt. No. 19 at 1. Second, Plaintiff claims that the ALJ erred by failing to incorporate Plaintiff's mental limitations into the RFC. *Id.*

6

For the reasons discussed below, the undersigned finds that both of Plaintiff's points lack merit.

A. <u>The ALJ properly considered the medical opinion evidence provided by treating sources.</u>

First, Plaintiff argues that the ALJ erred by not addressing the treating source opinion of licensed mental health counselor, Steve Queen, M.A. Dkt. No. 19 at 4. Plaintiff also argues that the ALJ failed to give deference to two other treating source opinions, that of Victor Hudman, M.D. and Vincent Van Acht, M.D. *Id*. at 5–6.

In response, the Commissioner argues that the ALJ properly addressed the relevant medical opinions in the record. Dkt. No. 22 at 4. The Commissioner contends that the ALJ did not need to address the opinion of Queen, because he was not an acceptable medical source. *Id*. Additionally, the Commissioner notes that Queen's submission was a check-box type form and such forms do not reach the level of a "medical opinion." *Id*. With respect to the ALJ's rejection of certain opinions of Dr. Hudman and Dr. Van Acht, the Commissioner notes that the rejection was warranted because the opinions were not supported by medical evidence. *Id*. at 4–5.

In determining whether a claimant is disabled, an ALJ must consider the "medical opinions" in the record together with the rest of relevant evidence received. 20 C.F.R. §§ 404.1527(b), 416.927(b).[4] "Medical opinions are statements from physicians and

---

[4] For claims filed before March 27, 2017, the rules provided by 20 C.F.R. §§ 404.1527, 416.927 apply with respect to the evaluation of medical opinion evidence. Plaintiff filed her application for disability and disability benefits on June 8, 2015. Therefore, these statutory provisions govern. *See generally* 20 C.F.R. § 404.164(a) (determining when an application is deemed filed under SSA rules).

psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairments and [the claimant's] physical or mental restrictions." §§ 404.1527(a)(1), 416.927(a)(1). Opinions from medical sources that are not "acceptable medical sources" can be considered when those opinions "reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources." §§ 404.1527(f)(1), 416.927(f)(1). A "treating source" is an "acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." §§ 404.1527(a)(2), 416.927(a)(2).

Nevertheless, treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. §§ 404.1527(d)(3); 416.927(d)(3). The ALJ is solely responsible for deciding whether a listing is met or equaled. SSR 96-6p, 1996 WL 374180, at *3. Whether a claimant's impairment meets the requirements of a listed impairment is usually more a question of medical fact than opinion because most of the requirements are objective and simply a matter of documentation, but nevertheless, it is still an issue ultimately reserved to the Commissioner. SSR 96-5P, 1996 WL 374183, at *3. Whether the impairment is equivalent in severity to the requirements of a listed impairment requires a judgment that the medical findings equal a level of severity that prevents a person from performing any gainful activity—an issue reserved to the Commissioner. *Id*. at *4.

Plaintiff takes issue with the ALJ's treatment of three medical source statements. First, Plaintiff objects because the ALJ did not mention the statements of Mr. Queen in the ALJ's opinion. Plaintiff does not contest the Commissioner's point that Queen, a licensed counselor, was not an "acceptable medical source" as defined under the regulations. Dkt. No. 23 at 2. Nevertheless, Plaintiff contends that the ALJ should not have ignored the opinion of Queen entirely, particularly when Queen was the main provider of Plaintiff's mental health treatment. *Id*.

In this case, it is clear that the ALJ was made aware of Queen's treatment relationship with Plaintiff through her testimony at the hearing. Tr. 113. Queen's treatment records (*see* 16F at Tr. 1229), and Queen's treating source statement (*see* 23F 1324–1330), were included as medical records noted in the Appendix to the ALJ's decision. *See* Tr. 102–103.

Queen's treatment records consist of a one-page counseling summary, which refer to sessions held on November 28, December 6, and December 11 of 2018. Tr. 1229. Queen conducted these sessions as a counselor at a Ministry of Counseling and Enrichment. *Id*. The records note that Plaintiff "suffers from clinically significant anxiety and depression largely resulting from Post-Traumatic Stress Disorder." *Id*. Queen states that Plaintiff suffers from "debilitating depression and anxiety" that is "intensified due to her inability to maintain daily living skills and therefore has been unable to work." *Id*. Nevertheless, Queen found Plaintiff's prognosis "hopeful" and referred her for Eye Movement Desensitization and Reprocessing Therapy ("EMDR"). *Id*.

Queen's treating source statement completed on January 30, 2019, consists of a pre-typed check-the-box form provided by Plaintiff's attorney which included the Listings for Mental Disorders under the Social Security regulations. Tr. 1334–1330. Under each Listing, the form provided a list of symptoms that could be checked. *See id*. Queen circled options under Listing 12.02 for Neurocognitive Disorders indicating that Plaintiff suffered from cognitive decline in complex attention and learning and memory. Tr. 1324. Queen also indicated, through the pre-typed options, that Plaintiff had either an extreme or marked limitation in her ability to: understand, remember, or apply information; concentrate, persists, or maintain pace; and adapt or manage oneself. *Id*. Queen also selected options under Listing 12.03 (Schizophrenia and other psychotic disorders), 12.04 (Depressive, bipolar and related disorders), 12.06 (Anxiety and obsessive-compulsive disorders), and 12.15 (Trauma and stressor related disorders). Tr. 1325–29. In the sole written notes provided on the form, Queen wrote that Plaintiff "is significantly impaired" from an accident but also from trauma. Tr. 1330.

Here, because Queen was a licensed counselor, he was not "an acceptable medical source" whose opinion the ALJ could rely upon to establish the existence of an impairment. *See* 20 C.F.R. §§ 404.1513(a); 416.913(a) (2013) (noting that "acceptable medical sources" includes licensed physicians, psychologists, optometrists, podiatrists, or qualified speech-language pathologists); *see also Berry v. Astrue*, No. 3:11-CV-02817-L BH, 2013 WL 524331, at *19 (N.D. Tex. Jan. 25, 2013) (finding that a licensed counselor was not an "acceptable medical source" and that her opinion was therefore not a "medical opinion" that could be used to establish the existence of a medically determinable impairment),

*report and recommendation adopted*, No. 3:11-CV-2817-L-BH, 2013 WL 540587 (N.D. Tex. Feb. 13, 2013). Nevertheless, as a "counselor" Queen's opinion could be considered, along with the other record evidence, for the purpose of showing the severity of an impairment and how it affects a claimant's ability to work. §§ 404.1513(d); 416.913(d) (2013).

When an opinion from someone other than an "acceptable medical source" involves the "same issues addressed in medical opinions from acceptable medical sources" the regulations contemplate the possibility that the "opinion from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the medical opinion of an acceptable medical source, including the medical opinion of a treating source." §§ 404.1527(f)(1), 416.927(f)(1). "[W]hen such opinions may have an effect on the outcome of the case" an ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." §§ 404.1527(f)(2), 416.927(f)(2).

Because Queen's statement was not a "medical opinion" from an "acceptable medical source" the ALJ was under no obligation to give it any weight if he determined that it would not have an effect on the outcome of the case. *See id*. And Plaintiff has not demonstrated that Queen's statement would have affected the outcome of the case such that the ALJ's failure to explicitly discuss it was reversible error.

11

As noted, Queen provided his medical source statement as a check-the-box form, one which directed him to select whether he believed Plaintiff had symptoms applicable to certain listed impairments. Tr. 1334–1330.

Even when completed by physicians, the Fifth Circuit held that checklists opinions are not entitled to considerable weight where such opinions are unsupported by or inconsistent with the medical records. *See Bradshaw v. Saul*, No. 4:18-CV-00947-P-BP, 2019 WL 7461703, at *6 (N.D. Tex. Dec. 12, 2019), *report and recommendation adopted*, 2020 WL 42283 (N.D. Tex. Jan. 2, 2020); *see also Foster v. Astrue*, 410 F. App'x. 831, 833 (5th Cir. 2011) ("[T]he 'questionnaire' format typifies 'brief or conclusory' testimony. . . . [W]e agree with the magistrate judge's conclusion that 'due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations, [the treating physician's] opinion is given little weight.'"); *Rollins v. Astrue*, 464 F. App'x 353, 357 n. 5 (5th Cir. 2012) (finding that "check-the-box" forms without additional explanations may be given less weight but reserving the determination for the ALJ).

Moreover, the ALJ was entitled to reject Queen's opinion on the basis that it was a question of law reserved for the Commissioner, not simply because of the opinion's form. The ALJ is solely responsible for deciding whether a listing is met or equaled, a finding that dictates a conclusion that a claimant is disabled. *See* SSR 96-6p, 1996 WL 374180, at *3.

For these reasons, the undersigned does not find that the ALJ committed reversible error in not addressing Queen's opinion in the ALJ's decision.

12

Plaintiff also takes issue with the ALJ's rejection of an opinion by Dr. Hudman. Dkt. No. 19 at 6. Plaintiff argues that the ALJ erred by assigning no weight to Dr. Hudman's opinion as a treating source. Dkt. No. 19 at 6. Plaintiff finds fault with the ALJ's determination that Dr. Hudman's conclusions were based solely on Plaintiff's subjective complaints. *Id*. Further, Plaintiff contends that the ALJ factually erred when he stated that the only "abnormal" finding by Dr. Hudman in an examination was Plaintiff's morbid obesity because physical examinations also showed lower extremity swelling, generalized weakness, and limited spinal flexion. *Id*. (citing Tr. 1224). Plaintiff further argues that the ALJ erred in giving deference to the opinions of the State agency medical consultants over Dr. Hudman. *Id*. at 7.

Generally, "[t]he opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 445 (5th Cir. 2000); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Where the ALJ rejects the opinion of the treating physician, the [Fifth Circuit has] held that, 'absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § [404.1527(c)].'" *Qualls v. Astrue*, 339 F. App'x 461, 465 (5th Cir. 2009) (quoting *Newton*, 209 F.3d at 453). These factors include: (1) the physician's length of treatment of the claimant and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the support of the physician's opinion afforded by the medical evidence of record; (4) the

consistency of the opinion with the record as a whole; (5) the specialization of the treating physician; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(2)–(6).

The opinions of treating physicians, however, are not conclusive, and the ALJ must decide the claimant's disability status. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001) (citing *Greenspan*, 38 F.3d at 237). "'Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.'" *Qualls*, 339 F. App'x at 465 (quoting *Newton*, 209 F.3d at 455–56). Upon a showing of good cause, the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Barrance v. Colvin*, No. 3:12-CV-71-BN, 2013 WL 1842286, at *3 (N.D. Tex. May 2, 2013) (citing *Newton*, 209 F.3d at 455–56).

Courts in the Northern District of Texas have since held that "*Newton* requires only that the ALJ 'consider' each of the [§ 404.1527(c)] factors and articulate good reasons for its decision to accept or reject the treating physician's opinion." *Jeffcoat v. Astrue*, No. 4:08-CV-672-A, 2010 WL 1685825, at *3 (N.D. Tex. April 23, 2010). "The ALJ need not recite each factor as a litany in every case." *Id*. at *3 (quoting *Emery v. Astrue*, No. 7:07-CV-084-BD, 2008 WL 4279388, at *5 (N.D. Tex. Sept. 17, 2008)).

Contrary to Plaintiff's assertions, the ALJ's decision to afford Dr. Hudman's opinion no weight was not based solely on the opinions provided by the State Agency medical consultants.

The ALJ's assessment of the evidence provided by Dr. Hudman states:

On October 5, 2016, Dr. Victor Hudman stated the following: The claimant's back pain was severely limiting, requiring narcotics. Her arthritis limited sitting, walking, and standing, and she needed frequent position changes. Her carpal tunnel limited fine motor movements and repetitive hand use (Exhibit 14F, page 4). I was not persuaded by Dr. Hudman's statement and gave it no weight in this decision. Here, Dr. Hudman apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and he seemed to accept uncritically as true most, if not all, of what the claimant reported, as these restrictions were not supported by the claimant's physical examination.

Tr. 92. The ALJ noted specific evidence from physical examinations performed by Dr. Hudman, including the one on October 5, 2016 where

the claimant's physical examination was essentially normal. The claimant had full range of motion of her neck, and there was no dyspnea, wheezing, rhonchi, or abnormal breath sounds. Here, Dr. Hudman reported no neurological or musculoskeletal abnormalities. In fact, the only abnormal finding was that the claimant's obesity limited the examination. At a subsequent evaluation on April 20, 2017, on musculoskeletal examination the claimant's motor strength and tone were normal. There was no tenderness noted, and the claimant exhibited normal movement of all extremities (Exhibit 18F, page 3). Furthermore, the claimant exhibited a normal gait and station and had normal curvature of her back (Exhibit 18F, page 4). As such, I found no basis for the restrictions assessed by Dr. Hudman. His suggested limitations were not persuasive.

Tr. 92–93.

The ALJ found Dr. Hudman's opinion unsupported because it was based in Plaintiff's self-reported symptoms and contradicted by the medical evidence, including Dr. Hudman's own findings. Tr. 92.

The ALJ fully supported his reasons for rejecting Dr. Hudman's opinion. Although he did not sequentially examine each § 404.1527(c) factor, the ALJ's narrative discussion and reasoning reflects that he implicitly considered and adequately applied each factor before discounting Dr. Hudman's opinion, assuming such an analysis was necessary. For example, the ALJ noted that Plaintiff had been seen by Dr. Hudman on more than one

occasion, a statement which goes to the length of the treatment relationship. Tr. 92–93. The ALJ, at the outset, stated that he considered "all of [Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on 20 C.F.R. 404.1529 and 416.929, and SSR 16-3p," and that he "also considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927." Tr. 86. Furthermore, throughout his opinion, the ALJ includes a detailed examination of the objective medical evidence and Plaintiff's treatment records from 2012 to 2018. *See* Tr. 86–94.

Plaintiff believes Dr. Hudman's opinion was consistent with the evidence and disagrees with the weight assigned by the ALJ. But Plaintiff effectively asks this Court to reweigh the evidence, or at the very least, second-guess the ALJ's assigned weight. Neither of those tasks are within the scope of this Court's review. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) (A court "may neither reweigh the evidence in the record nor substitute [its] judgment for the [Commissioner's].").

As a result, the undersigned finds that the ALJ did not err when he assigned "no weight" to Dr. Hudman's opinion.

Finally, Plaintiff objects to the ALJ's treatment of the medical source statement offered by treating physician Dr. Van Acht on April 8, 2019. Dkt. No. 19 at 6. This was a check-the-box form provided by Plaintiff's attorneys for completion. Tr. 1317. In the statement, Dr. Van Acht indicated that Plaintiff could stand and walk 0–2 hours and could sit 0-2 hours during an 8-hour day. *Id*. Dr. Van Acht also indicated that Plaintiff could rarely lift and carry less than 10 pounds and could never lift and carry 10 or more pounds.

*Id*. Finally, he noted Plaintiff could frequently finger and grasp, occasionally handle, but never stoop or crouch. *Id*. In other words, Dr. Van Acht found Plaintiff's limitations more restricting than the ALJ.

The ALJ gave this opinion little weight, finding that the limitations assessed by Dr. Van Acht were not supported by the medical evidence. Tr. 93. The ALJ cited a prior follow-up appointment with Dr. Van Acht in which Plaintiff had undergone a physical examination that was essentially normal. *Id*. The ALJ noted that other physical examinations had also frequently shown few limitations. *Id*. (citing Tr. 1238, 1251, 1264). As such, the ALJ found that Dr. Van Acht's medical source statement was without substantial support and therefore unpersuasive. *Id*.

Plaintiff argues that Dr. Van Acht's opinion was entitled to deference because he was a treating physician. Dkt. No. 19 at 7. And Plaintiff repeats his prior argument that the ALJ improperly rejected a treating opinion in favor of the opinions of State agency medical consultants. *Id*. At the same time, Plaintiff claims the ALJ improperly relied on "cherrypicked medical records" to support his finding that Plaintiff was more restricted than Dr. Van Acht's opinion indicates. *Id*.

But here again, Plaintiff mistakenly invites the Court to engage in a reweighing of the medical evidence. It is beyond the scope of this appeal for the Court to second-guess the ALJ's choice to afford Dr. Van Acht's opinion little weight, where the ALJ's decision was well-supported with objective medical evidence. *See Hollis*, 837 F.2d at 1383. The ALJ supported his decision to afford Dr. Van Acht's opinion little weight despite his being a treating physician. The ALJ's narrative discussion and reasoning again reflects that he

implicitly considered and adequately applied each of the § 404.1527(c) factors before discounting Dr. Van Acht's opinion. Moreover, Dr. Van Acht provided the medical source statement in question in the form of a check-the-box opinion which, because of its cursory nature, may be given less weight without additional explanation. *See Rollins*, 464 F. App'x at 357 n. 5.

Accordingly, the undersigned finds that the ALJ did not err when he assigned "little weight" to Dr. Van Acht's opinion.

B. The ALJ properly considered and incorporated Plaintiff's mental limitations in his RFC.

Plaintiff argues that the ALJ erred in not including Plaintiff's mental functional limitations in the RFC. Dkt. No. 19 at 9–13. Specifically, Plaintiff argues that the ALJ included no restrictions in the RFC regarding Plaintiff's limitations in her concentration, persistence, pace, as well as her ability to interact with others, adapt, and manage herself. *Id*. at 12. This is reversible error, Plaintiff argues, because it implicated the ALJ's determination that there were a substantial number of jobs in the national economy that she could perform. *Id*. at 12–13.

The Commissioner responds that Plaintiff is mistaken and the ALJ's RFC does fully incorporate any mental limitations. Dkt. No. 22 at 8.

An individual's RFC is the most an individual can do despite his limitations or restrictions. *See* 20 C.F.R. § 404.1545(a)(1). An RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1, 3–5 (S.S.A. July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for

5 days a week, or an equivalent work schedule." *Id*. at *1. "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Id*.

"It is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (per curiam) (quoting *Taylor v. Astrue,* 706 F.3d 600, 603 (5th Cir. 2012)). The ALJ's RFC assessment is to be based upon "*all* of the relevant evidence in the case record," including, but not limited to, "medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, and work evaluations." *Eastham v. Comm'r of Soc. Sec. Admin.*, No. 3:10-CV-2001-L, 2012 WL 691893, at *6 (N.D. Tex. Feb. 17, 2012) (citing SSR 96-8p).

The ALJ is responsible for resolving any conflicts in the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam). But the ALJ is not required to expressly state in the RFC the limitations on which it is based. *Cornejo v. Colvin*, No. EP-11-CV-470-RFC, 2013 WL 2539710, at *9 (W.D. Tex. June 7, 2013) (citing *Bordelon v. Astrue*, 281 F. App'x 418, 422–23 (5th Cir. 2008) (per curiam)). Nor is an ALJ required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The ALJ may find that a claimant has no limitation or restriction as to a functional capacity when there is no allegation of a physical or mental limitation or restriction regarding that capacity and no information in the record indicates that such a limitation or restriction exists. *See* SSR 96-8p, 1996 WL 374184, at *1.

When assessing mental impairments, the ALJ considers evidence of the claimant's abilities to understand, remember, and carry out instructions, as well as respond appropriately to supervision, co-workers, and pressures in a work setting. 20 C.F.R. § 404.1545(c). The ALJ uses the "paragraph B criteria" to rate the severity of a claimant's mental limitations in the following functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id*. § 404.1520a(c)(3); *see id*. Part 404, Subpart P, Appendix 1. Additionally, the ALJ considers limitations and restrictions that affect other work-related abilities. 20 C.F.R. § 404.1545(d).

Prior to determining Plaintiff's RFC, the ALJ concluded at step two that Plaintiff, in addition to her physical impairments, suffered from the severe mental impairment of major depressive disorder. Tr. 82. However, the ALJ determined that Plaintiff's anxiety disorder and bipolar disorder were non-severe impairments. Tr. 83. The ALJ noted that he was "cognizant of the substantial overlap in symptoms between different mental impairments, as well as the inherently subjective nature of mental diagnoses" and so considered Plaintiff's psychological symptoms and their effect on her functioning "together, instead of separately, regardless of the diagnostic label attached." *Id*. The ALJ also noted, however, that the "the record did not support diagnoses of anxiety or bipolar disorder by any mental health specialist." *Id*.

Before proceeding to the RFC analysis, the ALJ analyzed Plaintiff's mental functional limitations using the "paragraph B criteria." Tr. 84. The ALJ found Plaintiff to have no limitation in understanding, remembering, or applying information. *Id*. The ALJ

found Plaintiff had a mild limitation in interacting with others. *Id*. With respect to concentrating, persisting, or maintaining pace, the ALJ concluded Plaintiff had a moderate limitation. Tr. 85. And with respect to adapting or managing oneself, the ALJ found Plaintiff had a mild limitation. *Id*. The ALJ further noted that

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation. The mental residual functional capacity finding at steps 4 and 5 of the sequential evaluation requires a more detailed analysis (SSR 96-8p). The following residual functional capacity finding reflects the limitations I found after considering the "paragraph B" mental function analysis.

*Id*.

Later, in addition to the physical restrictions in the RFC, the ALJ concluded that Plaintiff "can perform occupations involving detailed, but not complex, instructions." Tr. 86.

"The well-settled rule in this Circuit is that in making a determination as to disability, the ALJ must analyze both the disabling effect of each of the claimant's ailments and the combined effects of all of these impairments." *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) (citation and quotation marks omitted). The Fifth Circuit has explained that, "'throughout the disability determination process,' the ALJ is required to consider the combined effect of any impairments 'without regard to whether any such impairment, if considered separately, would be of sufficient severity.'" *Gonzales v. Berryhill*, No. 3:16-CV-1830-BN, 2017 WL 3492215, at *6 (N.D. Tex. Aug. 15, 2017) (quoting *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000)). Even when an ALJ finds that a claimant's mental impairments are non-severe, "'the ALJ must still consider the impact of

[any] non-severe impairments—either singly or in combination with other conditions—when he determines [his] RFC.'" *Gonzales v. Colvin*, No. 3:15-CV-0685-D, 2016 WL 107843, at *5 (N.D. Tex. Jan. 11, 2016) (quoting *Williams v. Astrue*, No. 3:09-CV-0103-D, 2010 WL 517590, at *8 (N.D. Tex. Feb. 11, 2010)); 20 C.F.R. 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity.") "This is because even non-severe limitations may combine with other severe impairments to prevent an individual from doing past relevant work or narrow the range of work that the individual can perform." *Tusken v. Astrue*, No. 4:08-CV-657-A, 2010 WL 2891076, at *12 (N.D. Tex. May 25, 2010), *adopted by*, 2010 WL 2891075 (N.D. Tex. July 20, 2010).

Courts within this district have found no legal error where an ALJ does not include mental limitations in a claimant's RFC so long as the ALJ considered the limiting effects and restrictions of all impairments in the RFC analysis, even those impairments that are non-severe. *See*, *e.g.*, *Gonzales*, 2016 WL 107843, at *6, *8 (holding that "the ALJ adequately discussed and considered the limiting effects of [Plaintiff's] mental impairments in formulating his RFC" when the ALJ's RFC analysis considered relevant mental health records, reports, and plaintiff's testimony regarding his mental impairments).

As noted above, the ALJ recognized that Plaintiff suffered from the severe mental impairment of major depressive disorder and noted that the alleged impairments of bipolar disorder and anxiety were non-severe.

Here, contrary to Plaintiff's assertions, the ALJ considered the limiting effects and restrictions of Plaintiff's mental impairments in the RFC analysis, and included specific mental limitations in the RFC. In the RFC itself, the ALJ accounted for Plaintiff's mental limitations with the restriction that Plaintiff should be limited to "occupations involving detailed, but not complex, instructions."

In the RFC analysis, the ALJ demonstrated that he considered the effects and restrictions of Plaintiff's mental impairments. For example, the ALJ noted the May 19, 2015 record where Plaintiff endorsed depression with crying on a mental status examination. Tr. 87. Then the ALJ discussed in detail the psychological consultive examination that took place on August 5, 2015, where Plaintiff was diagnosed with persistent depressive disorder, an unspecified anxiety disorder, and an unspecified personality disorder. Tr. 87–88. There, the ALJ noted, Plaintiff exhibited mild psychomotor agitation and her mood appeared depressed and anxious. Tr. 87. The ALJ also noted that while her perceptions and thoughts were normal, Plaintiff's concentration was fair and she was unable to calculate serial subtraction. *Id*. In addition, the ALJ note that she was able to remember three of three items upon immediate and recent recall. *Id*. The ALJ also noted an occasion Plaintiff reported she was doing "okay" with her depression and anxiety. Tr. 88.

The ALJ also noted Plaintiff's own testimony regarding her psychological symptoms. Tr. 90. Specifically, he noted her testimony that she has PTSD, anxiety, depression, and bipolar disorder. *Id*. He also noted her testimony that she has panic attacks so severe that sometimes her husband has to stay home with her and that her anxiety attacks

would prevent her from going to work if she had a job. *Id*. The ALJ also noted the testimony

that Plaintiff hears intrusive voices and has difficulty remembering things. *Id*.

Nonetheless, the ALJ determined, based on other record evidence, that Plaintiff's

symptoms did not reach the severity discussed in the hearing. The ALJ stated:

> For example, on January 15, 2014, the claimant reported that although she cried at
> times, she did not have symptoms that were persistent. She said she did not want
> any further antidepressants. She reported she occasionally had panic episodes
> when thinking about her back pain (Exhibit 1F, page 133). It was noted she
> continued medications as needed for her panic attacks, which she reported were
> not happening very often. She added her depression was better and that she did
> not want any further medication for depression at that time (Exhibit 1F, page 134).

Tr. 90.

In reviewing the assessments by the State agency medical consultants, the ALJ

noted that he gave their opinions significant weight, except he rejected their opinion that

Plaintiff's mental impairments were not severe. Tr. 91. The ALJ noted that the State agency

medical consultants' assessments had not incorporated the psychological consultive

examination. *Id*. With respect to the reconsideration decision, the ALJ again noted that he

gave the State agency medical consultants' opinion significant weight, but that he did not

agree with the determination that Plaintiff's mental impairments were not severe, because

the psychiatric review technique and mental RFC assessment contradicted this finding. *Id*.

The ALJ then returned to the results of the psychological consultative examination

and noted:

> At the psychological consultative examination, Dr. Stephen Osborn opined as
> follows: The claimant is able to understand, remember, and carry out instructions.
> Her ability to sustain concentration and persistence in work-related activities
> appears fair but may be affected by her physical discomfort intruding on goal-
> directed behavior. She can interact socially with others such as family members and

others in work settings, and she reported she got along with fellow employees in the past. She has dealt with normal stressors of work in the past, and her current condition would suggest she may have some difficulty coping with normal work stress, and higher levels of stress in a work setting may result in increased anxious or depressive feelings (Exhibit 6F, page 4). I gave this opinion some weight in deciding that the claimant was limited to detailed, but not complex, instructions. As noted on mental status examination, the claimant was alert and oriented in all spheres, with intact memory. She was open, accessible, and cooperative. Although the claimant frequently cried while providing her history, her perceptions and thought content were normal, and her concentration was fair (Exhibit 6F). Therefore, a limitation to detailed, but not complex, instructions is reasonable.

Tr. 92.

In sum, contrary to Plaintiff's assertions, the ALJ's analysis contains a thorough discussion of Plaintiff's mental impairments, the mental limitations recognized by the ALJ, and the medical evidence and opinions related to Plaintiff's mental limitations. It is clear that the ALJ considered Plaintiff's mild limitations in interacting with others and adapting or managing oneself. It is likewise clear the ALJ considered Plaintiff's moderate limitation in concentrating, persisting, or maintaining pace.

In light of Plaintiff's mental limitations, the ALJ determined that Plaintiff's RFC would be limited to jobs with detailed, but not complex, instructions. Beyond that, the ALJ was under no obligation to include additional restrictions that he did not find supported in the record. *See* SSR 96-8p, 1996 WL 374184, at *1.

Accordingly, the undersigned finds that the ALJ did not err in his RFC determination by failing to include Plaintiff's mental limitations. *See Danny R. C. v. Berryhill*, No. 3:17-CV-1682, 2018 WL 4409795, at *15–16 (N.D. Tex. Sep. 17, 2018) (finding no legal error where the ALJ declined to include mental limitations in plaintiff's

RFC because the ALJ's "decision reflect[ed] that he considered Plaintiff's mental functioning when performing his RFC analysis.").

## IV.  RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the hearing decision be AFFIRMED. Because all parties have not consented to proceed before a United States Magistrate Judge, the undersigned directs the Clerk of Court to REASSIGN this case to Senior United States District Judge Sam R. Cummings in accordance with normal procedures.

## V.  RIGHT TO OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific or sufficient. Failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except on grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

ORDERED this 2nd day of August, 2021.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE